IN THE STATES DISTRICT COURT
THE EASTERN DISTRICT OF WISCONSIN

Jonathan L. Jones,

  **Plaintiff,**

V.                 Case No. **21-C-0851**

Jennifer MC Dermott, Warden
L. Wilson, Warden Secretary
William B. Kelley, M.D.
Paul A. Bekx, M.D.
L. Doehling, (HSM)
Julie Ludwig, (HSM)
Stephen Randall, R.N.
Joanie Sullivan, R.N.
Tracy L. Thompson, R.N.
HSU Depts. John & Jane Doe
  **Defendants.**             **JURY TRIAL DEMANDED**

## COMPLAINT

Now comes the plaintiff, Jonathan Jones, Pro se, who complains against the above-named Defendant's, and for his claims for relief, states and shows to the Court as follows:

## INTRODUCTION

1.  This is an action under 42 U.S.C Section 1983 to redress the deprivation under color of law plaintiff's rights as secured by the EIGHT and FOURTEENTH AMENDMENT of the UNITED STATES CONSTITUTION, and the State law claims for negligence and indemnification.

1

## JURISDICTION AND VENUE

2.      This Court has Jurisdiction of the action pursuant to 28 U.S.C Section 1331 and for the State claim of negligence and indemnification pursuant to 28 U.S.C. Section 1367.

## PARTIES

3.      Plaintiff Jonathan L. Jones, pro se, who is currently imprisoned at Kettle Moraine Correctional Institution. Plaintiff is not well versed in civil law and respectfully request that complaint be read generously.

4.      Defendant JENNIFER MC DERMOTT ("DERMOTT") is the Warden of Kettle Moraine Correctional Institution. In her official capacity she oversees Kettle Moraine Correctional Institution in its entirety. DERMOTT who is and was relevant to this action is employed by the Wisconsin Department of Corrections, acting under the color of law and within the scope of her employment. DERMOTT is sued in her individual and official capacity.

5.      Defendant Dr. William Kelley, M.D. ("Dr. Kelley") is a Doctor. Dr. Kelley is employed by the Wisconsin Department of Corrections and is currently staffed at Kettle Moraine Correctional Institution in the Health Service Unit (HSU). Acting under the color of law and within the scope of his employment, he has legal responsibility of providing adequate medical care to inmates. Dr. Kelley is sued in his individual and official capacity.

6.      Defendant Dr. Paul A. Bekx, M.D. ("Dr. Bekx") is a doctor. Dr. Bekx is employed by the Wisconsin Department of Corrections and is currently staffed at Kettle Moraine Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope

of his employment, he has the legal responsibility of providing adequate medical care to inmates. Dr. Bekx is sued in his individual and official capacity.

7. Defendant L. Doehling HSU Manager ("Doehling") is a Registered Nurse (RN) is a Registered Nurse (RN). Doehling is employed by the Wisconsin Department of Corrections and is currently staffed at Kettle Moraine Correctional Institution as the Health Service Unit (HSU) Manager. In the capacity she oversees the prison's Health Service Unit. Acting under the color of law and within the scope of her employment she has the legal responsibility of providing adequate medical care to inmates. Doehling is sued in her individual and official capacity.

8. Defendant Julie Ludwig HSU Manager ("Ludwig") is a registered Nurse (RN). Ludwig is employed at Kettle Moraine Correctional Institution by the Department of Corrections and is currently the Health Service Unit (HSU) Manager. In that capacity she oversees the prisons Health Service Unit. Acting under the color of law and within the scope of her employment she has the legal responsibility of providing adequate medical care to inmates. Ludwig is sued in her individual and official capacity.

9. Defendant Stephen Randal ("Randal") is a Registered Nurse (RN). Randal is employed by the Wisconsin Department of Corrections and is currently staffed at Kettle Moraine Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope of his employment he has the legal responsibility of providing adequate medical care to inmates. Randal is sued in his individual and official capacity.

10. Defendant Joanie Sullivan ("Sullivan") is employed by the Wisconsin Department of Corrections and is currently staffed at Kettle Moraine Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope of her employment she

3

has the legal responsibility of providing adequate medical care to inmates. Sullivan is sued in her individual and official capacity.

11.     Defendant Tracy Thompson ("Thompson") is employed by the Wisconsin Department of Corrections and is currently staffed at Kettle Moraine Correctional Institution at the Health Service Unit (HSU). Acting under the color of law and within the scope of her employment she has the legal responsibility of providing adequate medical care to inmates. Thompson is sued in her individual and official capacity.

12.     Defendant L. Wilson ("Wilson) is the Warden Secretary. Wilson is employed by the Wisconsin Department of Corrections and is currently staffed at the Kettle Moraine Correctional Institution. Acting under the color of law and within the scope of his employment Wilson is sued in his individual and official capacity.

13.     Defendant John and Jane Doe (HSU Depts.) are employed by the Wisconsin Department of Corrections. Acting under the color of law and within the scope of their employment they have the legal responsibility of providing adequate medical care to inmates. John & Jane Doe is sued in their individual capacity.

## FACTS

14.     On October 24, 2018, Plaintiff Jones was attending recreation at the prison's "Inside Gym Room Area."

15.     While playing the game of basketball, Plaintiff Jones slips badly on the Gym Room floor causing his leg to hyperextend, thus causing Plaintiff Jones excruciating pain obvious substantial left leg injury, i.e., **instant swelling, and no extension.**

4

16. Plaintiff was immediately escorted to the prison's Health Service Unit, (herein after HSU), so that so that the prison medical staff could assess the severity of plaintiff's left leg injury and render adequate medical care/treatment accordingly.

17. Plaintiff was seen by William B. Kelley (M.D.).

18. Despite Plaintiff's obvious substantial left leg injury and Plaintiff's repeated requests for x-rays to ascertain the full extent of Plaintiff's injury, Kelley (M.D.) issued Plaintiff a "medical ice bag," some "Ibuprofen", "ace wrap," an "extra pillow," "crutches," and was sent back to his assigned unit.

19. On October 26, 2018, Plaintiff submitted 2 Health Service Unit Request seeking medical treatment due to him experience excruciating pain and having difficulties walking.

20. On October 29, 2018, a follow-up was conducted by Dr. Kelley on Plaintiff's left knee injury. No further medical treatment was provided to Plaintiff at this time.

21. On October 31, 2018, seven days after Plaintiff suffered substantial knee injury, he was seen by Wisconsin Department of Corrections radiologist John & Jane Doe. X-rays were taken on Plaintiff's left leg/knee injury. The findings from the x-ray imaging showed "No acute fracture or dislocation. Joint spaces are well maintained. No acute bony abnormality."

22. On December 15, 2018, Plaintiff submitted a Health Service request (hereinafter "HSR") seeking medical treatment due to experiencing excruciating pain and difficulty walking.

23. On December 16, 2018, a response was received from John or & Jane Doe indicating Plaintiff reported to Dr. Kelley that Plaintiff's knee was getting better and that Plaintiff didn't need crutches anymore.

5

24. On December 22, 2018, Plaintiff submitted ("HSR") seeking help with why he was placed on the top bunk and why he wasn't being seen about his knee injury.

25. On December 23, 2018, Plaintiff received a response from John & Jane Doe indicating "nursing sick call." (**No medical treatment was provided to Plaintiff at the time.**).

26. On February 14, 2019, over 113 days after Plaintiff suffered substantial left knee injury, he was transported offsite to "St. Agnes Hospital." Dr. Kelley ordered (MRI) to be taken on Plaintiff's left knee.

27. The MRI revealed that "There is several different things wrong with the Plaintiff's left knee:

1). complete bucket-handle type tear of the lateral meniscus
2). medical meniscal tear
3). midsubstance ACL tear
4). Grade 1 sprain of protimal MCL
5). multifocal osseous contusions including osteochondral impaction injury at the inferior surface of the lateral femoral condyle
6). left knee effusion

28. Despite the obvious injuries to Plaintiff's left knee and the constant complaints of excruciating pain, Plaintiff was yet denied surgery when on March 19, 2019, offsite doctor recommended surgery. (**No medical treatment was provided to Plaintiff at this time.**).

29. On May 21, 2019, Plaintiff received an (HSU) slip from Tracy L. Thompson (R.N.) informing Plaintiff that she'll update Plaintiff on a new plan of care since Plaintiff's injury was back in October. Tracy L. Thompson documented Plaintiff's obvious left knee injury and concluded the follow-up. (**No medical treatment was provided at this time**.).

30. On July 22, 2019, Plaintiff submitted an (HSU) slip seeking medical treatment due to excruciating pain and difficulty walking.

6

31. On July 23, Plaintiff received response from Thompson (R.N.) indicating "Plaintiff's issue wasn't an emergency and people with ACL tears function just fine." (**No medical treatment was provided to Plaintiff at this time**.).

32. On July 25, 2019, Plaintiff wrote to HSU about possibly receiving "ace wrap" for Plaintiff's injured knee. John and Jane Doe replied saying; "a knee sleeve will offer much more support than an ace wrap." (**No medical assistance was provided to Plaintiff at this time**.).

33. On August 20, 2019, Plaintiff submitted an HSU slip to the "Health care providers" concerning an ice bag and ace wrap. Stephen Randall (R.N.) responded on August 24, 2019, informing Plaintiff that if Plaintiff was leaving the institution for any type of treatment, Plaintiff would need a new evaluation. Plaintiff also submitted an additional HSU slip to "Health Services" questioning the physical therapy that Dr. Bekx had suggested before surgery. R.N. Thompson responded on August 21, 2019. (**No medical assistance was provided to Plaintiff at this time.**).

34. On September 10, 2019, plaintiff felt as if he wasn't going to get the surgery anytime soon. By this time Plaintiff had been limping around the entire Kettle Moraine Institution for a time period of 321 days.

35. On September 10, 2019, Plaintiff filled out an Interview request form, with a letter attached, to Jennifer MC Dermott (Warden), seeking help about getting the surgery because Plaintiff was tired of the excruciating pain caused by left knee injury.

36. On September 11, 2019, Plaintiff received his Interview Request form back with a response from L. Wilson (Warden Secretary) telling Plaintiff to write L. Doehling, Health Service Manager (HSM).

37. On September 12, 2019, Plaintiff submitted a letter with an Interview Request form to L. Doehling (HSM) about the delay in ordering surgery for leg/knee injury. (**Plaintiff never received a response from L. Doehling.**).

38. On September 26, 2019, Plaintiff submitted another Interview Request form to L. Doelhing (HSM).

39. On September 27, 2019, Plaintiff receives a response from John & Jane Doe stating Plaintiff needed to be evaluated if Plaintiff was looking for treatment. (**No medical treatment was rendered to Plaintiff**.).

40. On December 5, 2019, Plaintiff submitted an (HSU) request form about almost falling because Plaintiff's left knee collapsed being unstable.

41. On December 5, 2019, Plaintiff submitted a two-page letter through an Interview Request form to HSU manager of K.M.C.I. explaining that he had felt that his knee injuries has now became deliberate indifference, cruel and unusual punishment and a violation of his eighth amendment.

42. On December 9, 2019, Plaintiff received an (HSU) form submitted by Joanie Sullivan (R.N.) stating, "Plaintiff's surgery was denied by Madison and to continue taking the ibuprofen because they strengthen the muscles around the knee."

43. On June 26, 2020, over 611 days since Plaintiff sustained left knee injury, numerous requests to HSU about experiencing pain and difficulty walking were sent to Waupun Memorial Hospital to be seen by Dr. Eric Nelson (Orthopedic M.D.).

44. On June 26, 2020, Plaintiff underwent major surgery (i.e. ACL tear, tear of discoid lateral meniscus, ACL reconstruction, and partial lateral menisactomy) to repair his damaged knee and relieve him of the suffering his injuries were causing.

45. On August 17, 2020, Plaintiff was transported to Waupun Memorial Hospital for left knee manipulation under anesthesia.

46. On September 14, 2020, Plaintiff was visited over an audio-visual telemedicine by Waupun Memorial Hospital for a post- surgery follow-up.

## Count I-42 U.S.C. Section 1983
## Eighth Amendment: Deliberate Indifference,
## Delayed, Inadequate Medical Care to An Obvious
## Substantial Knee Injury and Fourteenth Amendment:
## Equal Protection

47. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

48. A blown-out knee is a serious injury and permanent harm could result if absent proper evaluation possible realignment, and immediate medical care.

49. Since sustaining left knee injury, Plaintiff sought medical treatment from previously named defendant's for said injury and complications (i.e. pain, suffering, and distress, difficulty walking properly) over a 18 month time span.

50. Despite numerous "follow-up" visits to HSU, the above-named defendants utterly failed to render adequate medical treatment to Plaintiff's substantial knee injuries and/or relieve him if his pain, suffering, and distress.

51. The previously named defendants were deliberately indifferent to Plaintiff's obvious substantial knee injuries and simply refused or delayed to render adequate medical treatment.

52. This unreasonable delay led to Plaintiff's knee to deform and create a permanent limp which ultimately led to Plaintiff having to undergo major surgery to repair damaged knee.

53. It wasn't until February 19, 2019, when an MRI was ordered, which was over 113 days after Plaintiff sustained obvious substantial knee injuries.

9

54. It was deliberate indifference for Dr. Paul A. Bekx not to render Plaintiff with adequate medical care before and/or after MRI results revealed Plaintiff did, in fact suffer a blown out left knee.

55. It was deliberate indifference for Dr. William B. Kelley to delay ordering MRI to be done on Plaintiff's knee until over 113 days after Plaintiff suffered obvious substantial knee injuries.

56. It was deliberate indifference for Dr. William B. Kelley to acknowledge Plaintiff did, in fact suffer blown out knee and still did nothing to get Plaintiff treated.

57. All persons involved in some way either participated in the delay and denial of adequate medical care, or facilitated the constitution of the delay and denial if adequate medical care as a result of deliberate indifference and/or willful negligence in performing their job duties.

58. Defendants' actions or lack thereof demonstrate a clear showing of deliberate indifference that rose to a level of cruel and unusual in violation of the Plaintiff's Eight and Fourteenth Amendment rights under the United States Constitution.

### A. PLAINTIFF'S OBVIOUS SUBSTASTAINAL KNEE INJURIES

59. Each paragraph in this complaint is incorporated as if restated fully herein.

60. MRI images confirmed Plaintiff did in fact suffer a badly injured left knee.

61. John & Jane Doe noted "Plaintiff's knee was still swollen and will be sent for consultation with orthopedics for further evaluation."

62. Dr. E. Nelson, M.D., Waupun Memorial Hospital Orthopedics Assessment Report Examination:

Chronic left ACL tear with tear of medical meniscus and chronic displaced
bucket handle tear of lateral meniscus.
Low grade sprain of the medical collateral ligament.

## B. PLAINTIFF'S REPEATED INQUIRIES TO HEALTH SERVICE UNIT (HSU) FOR MEDICAL TREATMENT FOR OBVIOUS SUBSTANTIAL KNEE INJURYIES AND DEFENDANT'S DELAYING OR FAILING TO RENDER TREATMENT

63. Each paragraph in this complaint is incorporated as if restated fully herein.

64. On October 26, 2018, Plaintiff submitted 2 Health Service Request seeking medical treatment due to excruciating pain and difficulty walking.

65. On October, 29, 2018, a follow-up was conducted by Dr. Kelley on Plaintiff's left knee injury. (**No medical treatment was provided to Plaintiff at this time.**).

66. On October 31, 2018, 7 days after Plaintiff suffered substantial knee injury, Plaintiff was seen by the Wisconsin Department of Corrections radiologist, John & Jane Doe and x-rays were taken on Plaintiff's leg/knee injuries.

67. On October 31, 2018, Plaintiff's x-ray medical imagining findings:

> no acute fracture or dislocation, joint spaces are
> well maintained, no acute bony abnormality.

68. On December 15, 2018, Plaintiff submitted a Health Service Request ("HSR") herein seeking medical treatment due to experiencing excruciating pain and difficulty walking.

69. On December 22, 2018, Plaintiff submitted ("HSR") seeking help with why he was placed on top bunk and why he wasn't being seen any more about knee injury.

70. On December 23, 2018, Plaintiff received a response from John & Jane Doe indicating "Nurse Sick Call." (**No medical treatment was provided to Plaintiff at the time.**).

71. On February 14, 2019, over 113 days after Plaintiff suffered substantial left knee injuries was Plaintiff transported offsite to "St. Agnes Hospital" where Dr. Kelley ordered (MRI) to be taken on Plaintiff's left knee.

72. Despite obvious injuries to Plaintiff's left knee and constant complaints of excruciating pain, Plaintiff was still denied surgery. March 20, 2019, when offsite doctors recommended surgery, no medical treatment was provided to Plaintiff at this time.

73. On May 21, 2019, Plaintiff received an (HSU) slip from Tracy L. Thompson (R.N.), informing Plaintiff that she'll update Plaintiff on a new plan of care since Plaintiff's injury was back in October.

74. Tracy L. Thompson (R.N.) documented Plaintiff's obvious left knee injury and concluded the follow-up. (**No medical treatment was provided to Plaintiff at this time.**).

75. On July 22, 2019, Plaintiff submitted an (HSU) slip seeking medical treatment due to excruciating pain and difficulty walking.

76. On July 23, 2019, Plaintiff received response from Tracy L. Thompson (R.N.) indicating "Plaintiff's issue wasn't an emergency and that people with ACL tears function just fine." (**No medical treatment was provided to Plaintiff at this time.**).

77. On July 25, 2019, Plaintiff wrote to (HSU) about possibly receiving an "ace wrap" for Plaintiff's injured knee. John & Jane Doe replied saying a knee sleeve will offer much more support an ace wrap. (**No medical treatment was provided at this time.**).

78. On August 20, 2019, Plaintiff submitted an (HSU) slip to the "Health Service Care Providers" concerning an ice bag and ace wrap. Stephen Randall (R.N.) responded by letting Plaintiff know if Plaintiff was looking for any type of treatment, Plaintiff was going to need a new evaluation.

12

Case 2:21-cv-00851-BHL    Filed 07/16/21    Page 12 of 19    Document 1

79. On August 20, 2019, Plaintiff submitted another (HSU) slip asking about physical therapy that was suggested by Dr. Bekx. (**No medical treatment was provided to Plaintiff at this time.**).

80. On September 10, 2019, Plaintiff just felt as if he wasn't going to be getting the surgery anytime soon. By this time Plaintiff had been limping around the entire Kettle Moraine Correctional facility for a time period of 321 days.

81. On September, 10, 2019, Plaintiff filled put an Interview Request form with a letter to Jennifer McDermott (Warden), seeking some type of help about getting the surgery because Plaintiff was tired of the excruciating pain he kept feeling inside his left knee.

82. On September 11, 2019, Plaintiff received the Interview Request form back from L. Wilson (Warden Secretary) stating to write L. Doehling (HSM) "Health Service Manager".

83. On September 12, 2019, Plaintiff submitted a letter with an Interview Request slip to L. Doehling (HSM) about the delay in ordering surgery on leg/knee substantial injury. Plaintiff never received anything back from L. Doehling (HSM).

84. On September 26, 2019, Plaintiff submitted another Interview Request form to L. Doehling (HSM).

85. On September 27, 2019, Plaintiff received a response from John & Jane Doe stating Plaintiff needed to be evaluated if Plaintiff was looking for treatment. (**No medical treatment was rendered to Plaintiff at this time.**).

86. On September 05, 2019, Plaintiff submitted an (HSU) request form about almost falling because Plaintiff's left knee collapsed from being unstable.

87. On December 05, 2019, Plaintiff submitted a two-page letter through an Interview Request form to HSU/Manager/KMCI explain that he felt his knee injuries has now become deliberate indifference, cruel and unusual punishment and a violation of the eight amendment.

88. On December 09, 2019, Plaintiff received an (HAU) form submitted by Joanie Sullivan (R.N.) saying Plaintiffs surgery was denied by Madison, WI and to continue taking ibuprofen, they strengthen the muscles around the knee.

89. On June 26, 2020, over 611 days since Plaintiff submitted claim of the left knee injury sustained, numerous requests to HSU about experiencing pain and difficulty walking were sent to Waupun Memorial Hospital to be seen by Dr. Eric Nelson (orthopedic M.D.).

90. On June 26, 2020, Plaintiff underwent major surgery (i.e., ACL tear, tear of discol lateral meniscus, ACL reconstruction partial lateral menisactomy) to repair his damaged knee and relieve him from the suffering his injuries were causing.

91. On August 17, 2020, Plaintiff was transported back to (WHM) for left knee manipulation under anesthesia, i.e. periarticular edema, lacus termina extension, postoperative stiffness with saucerization of discord lateral meniscus.

92. On September 14, 2020, Plaintiff was visited over an audio-visual telemedicine by (WHM) for a post-surgery follow-up.

## C. PLAINTIFF'S OBVIOUS SUBSTANTIAL KNEE INJURIES REQUIRED MAJOR SURGERY TO REPAIR

93. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

94. Plaintiff suffered a substantial knee injury that required major surgery (i.e. left knee arthroscopic-assisted, ACL reconstruction with partial lateral menisatomy).

95. Dr. Eric Nelson primary diagnosis of Plaintiff's left knee:

"ACL tear, tear of discord lateral meniscus, ACL reconstruction with partial lateral menisactomy."

96. Dr. Eric Nelson recommended surgery on a timely basis for arthroscopic assisted ACL reconstruction given the chronology of meniscal injuries & partial menisactomy.

## D. PLAINTIFF HAD TO UNDERGO MAJOR SURGERY TO REPAIR DAMAGED KNEE

97. Each of the paragraphs in complaint is incorporated as restated herein.

98. On June 26, 2020 over 611 days since Plaintiff sustained substantial knee injuries, Plaintiff was again transported to Waupun Memorial Hospital.

99. On June 26, 2020, Plaintiff underwent major surgery (i.e. left knee arthroscopic-assisted, ACL reconstruction with partial lateral menuisactomy), to repair his damaged knee and relieve him if the suffering his obvious injuries were causing him.

## Count II – NEGLIGENCE OF HSU PERSONNEL

100. Each of the paragraphs in this complaint is incorporated as if restated fully herein.

101. Despite Plaintiff's obvious substantial knee injuries, (i.e. complete bucket-handle type of the lateral meniscus, medical meniscal tear, midsubstance ACL tear, Grade 1 sprain of proximal MCL, multifocal osseous contusions including osteochondral impaction injury at the inferior surface of the lateral femoral condyle, left knee effusion, instant swelling of the leg and knee, excruciating pain, and repeated pleas for MRI to ascertain the full extent of injuries.

102. Dr. Kelley (M.D.) issued Plaintiff a "medical ice bag", some ibuprofen, Ace wrap, extra pillow and two crutches and sent him back to the unit he was assigned to.

103. It was negligence for the above-named Defendant's not to render adequate medical care to Plaintiff for his obvious knee injuries or at the very least ascertain the extent of Plaintiff's injuries via MRI or immediately referring him to a specialist who could rendered medical care accordingly.

104. It was negligence for Dr. Kelley not to render Plaintiff with adequate medical treatment before and/or after MRI results revealed Plaintiff did, in fact, suffer from a badly damaged knee.

105. It was negligence for Dr. Bekx not to render Plaintiff with adequate medical treatment before and/or after MRI results revealed Plaintiff did, in fact, suffer from a very badly damaged knee.

106. It was negligence for Kelley to delay ordering an MRI to be done on Plaintiff's knee until over 113 days after Plaintiff suffered obvious substantial knee injuries.

107. It was negligence for Dr. Bekx to delay ordering an MRI to be done on Plaintiff's knee until 113 days after Plaintiff suffered obvious substantial knee injuries.

108. It was negligence for Dr. Kelley to acknowledge Plaintiff did, in fact, suffer a blown-out knee and did not give or get Plaintiff any proper medical care.

109. This unreasonable delay prevented medical personnel from finding out the extent of Plaintiff's obvious injuries and treating the injuries accordingly. This unreasonable delay caused the knee to "try healing itself". These were major factors in the Plaintiff's pain, suffering, and distress.

110. Each of the paragraphs in this complaint is incorporated as if restated fully herein Wisconsin law, Wisconsin Stat. Section §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

111. At all times relevant herein, the defendants were employees of the Wisconsin Department of Corrections, who acted within the scope of their employment.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, Jonathan L. Jones respectfully prays that this Honorable Court enter a judgment in his favor according to the law which applies and against the defendant's K.M.C.I Warden Jennifer McDermott, Warden secretary L. Wilson, Health Services Manager L. Doehling, Julie Ludwig, Dr. William B. Kelley, M.D., Dr. Paul A. Bekx, M.D., Stephen Randall, (R.N.), Tracy L. Thompson, (R.N.), John & Jane Doe K.M.C.I HSU And HSU DEPTS. awarding compensatory damages, attorney fees and costs against each defendant, punitive damages against each of the individual defendant's, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Jonathan L. Jones, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated at Plymouth, Wisconsin this _____ day of _____ 2021.

RSPECTFULLY SUBMITTED,

_____

Jonathan L. Jones #574736
Kettle Moraine Correction Inst.
P.O Box 282
Plymouth, WI 53073

# VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to true. I certify under penalty of perjury that the foregoing is true and correct.

Dated this_____ day of_____2021.


Signature,

_____

Jonathan L. Jones #574736
Kettle Moraine Correction Inst.
P.O Box 282
Plymouth, WI 53073